**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| | : | 3:19-CR-74 (6) (JCH) |
| v. | : | |
| | : | |
| PEDRO SANTOS, | : | JULY 8, 2022 |
| Defendant. | : | |

**RULING RE: MOTIONS FOR COMPASSIONATE RELEASE (DOC. NOS. 2125 & 2140) AND MOTION TO REDUCE SENTENCE (DOC. NO. 2058)**

## I.    INTRODUCTION

Pedro Santos, a defendant sentenced by this court, is currently serving that sentence with the Bureau of Prisons ("BOP").  Pending before this court are a pro se Motion for Compassionate Release (Doc. No. 2125), a pro se Motion to Reduce Sentence under the First Step Act and Amendment 782 (Doc. No. 2058), and a Supplemental Motion for Compassionate Release and Memorandum in Support filed by court-appointed counsel for Mr. Santos.  See Supplemental Motion to Reduce Sentence (Doc. No. 2140) ("Suppl. Mot."); Memorandum in Support (Doc. No. 2140-1) ("Mem. in Support of Suppl. Mot.").  The government has opposed Mr. Santos's Motions.  See Government's Memorandum in Opposition ("Mem. in Opp.") (Doc. No. 2150).

## II.    MOTIONS FOR COMPASSIONATE RELEASE (DOC. NOS. 2125 & 2140)

The court will first address Mr. Santos' Motions for Compassionate Release.   As is required for "compassionate release" under section 3582(c)(1)(A)(i) of title 18 of the United States Code, Mr. Santos has exhausted his administrative remedies.  See Government's Supplemental Memorandum in Opposition  ("Suppl. Mem. in Opp.") (Doc. No. 2155).

In his Motions, Mr. Santos argues that there are extraordinary circumstances which justify a sentence reduction.  See Suppl. Mot. at 1.  He rests his argument on the COVID-19 pandemic, his medical conditions, and his exemplary conduct while incarcerated.  Id.  He claims to suffer from "major depressive disorder, hypertension, unspecified abnormalities of heartbeat, and nerve injury to arm and wrist."  Mem. in Support of Suppl. Mot. at 5, 13.  In addition, Santos argues that he is vulnerable to contracting COVID-19 and, because he is now 49 years of age,[1] he maybe more likely to develop severe symptoms.  Id. at 12.

Mr. Santos himself remains unvaccinated, as he refused the vaccine offered by the BOP in March 2021 and again in January 2022.  See Medical Records (Doc. No. 2151) at 50, 87.  He does not articulate his reasons for refusing the vaccine in his Motion or his Supplemental Motion.

Further, Mr. Santos argues that the 3553(a) factors weigh in favor of a reduced sentence, particularly because of his mature age, his exemplary conduct, the effort made to improve his skills, and his low risk of recidivism.  Mem. in Support of Suppl. Mot. at 15-17.

Mr. Santos has identified some borderline medical risk factors that increase his likelihood of experiencing severe illness should he contract COVID-19.  Clearly, though, like all unvaccinated individuals, Mr. Santos is more vulnerable to the virus and its effects than his vaccinated peers.  It is this court's view that, absent a clear showing of a

---

[1] Mr. Santos' Supplemental Motion states that he was 48 or 49 years old as of the Motion's January 19, 2022 filing.  See Mem. in Support of Suppl. Mot. at 12 (48 years), 15 (49 years). According to his presentence report, he was born in 1972 and is 49 at the time of this Ruling.  See Revised Presentence Report (Doc. No. 1692).

medical or other justified reason for refusing the vaccine, an inmate does not present exceptional circumstances on the basis of possible exposure to COVID-19, or any of its variants, when that inmate declines the offer of a highly effective vaccine that greatly reduces transmission and markedly lowers the risk of contracting a serious or life-threatening case of the virus.

Courts in this and other Circuits have reiterated that unfounded refusal of the COVID-19 vaccine generally does not create extraordinary and compelling circumstances warranting release.  See United States v. Poupart, No. 3:11-CR-116, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("[t]he opportunity for . . . inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 vulnerability . . . . Evidence that a defendant has been offered the vaccine . . . demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk of severe illness or death from COVID-19") (internal citation omitted); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release");  United States of America v. Carl Hubbard, No. 3:17CR173 (JBA), 2021 WL 5275997, at *4 (D. Conn. Nov. 12, 2021) ("being offered and refusing the COVID-19 vaccine is not an automatic, disqualifying factor for compassionate release, but refusing the vaccine without informed reason substantially detracts from an incarcerated person's claim of exceptional medical vulnerability in prison . . . . When an incarcerated individual has refused the COVID-19 vaccine, courts have nearly uniformly denied compassionate release sought for medical reasons.") (internal quotation marks and citation omitted)

(citing cases); United States v. Burden, No. 3:00-CR-263 (JCH), 2021 WL 3742111, at

*3 (D. Conn. Aug. 23, 2021) ("In the absence of . . . a showing [of a medical reason for

declining the vaccine], taking the vaccine would reduce . . . [an inmate's] risk of COVID-

19 exposure dramatically. It cannot be, in this court's view, that an inmate can decline a

vaccine which, if taken, will largely avoid the risks which themselves form the basis for

his position that extraordinary circumstances exist to justify a reduction in his

sentence.").

Furthermore, evidence of the vaccine's effectiveness supports the broad

consensus among courts that unwarranted refusal of the vaccine cannot undergird an

inmate's claim of extraordinary and compelling circumstances.  The CDC has found that

vaccinated people ages five and older face only half the risk of contracting COVID-19

compared to unvaccinated persons.  See Rates of COVID-19 Cases and Deaths by

Vaccination Status, CTRS. FOR DISEASE CONTROL & PREVENTION,

https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last visited July 5,

2022).  Even more compelling are the statistics regarding life-threatening complications;

fully vaccinated and boosted persons ages 50 or older are a stunning 42 times less

likely to die after contracting the virus.  Id.  Mr. Santos, who is 49 years old as of the

time of this Ruling, could greatly reduce his risk of serious health consequences by

getting vaccinated.

This court acknowledges that the Second Circuit has suggested that an inmate

should be afforded the opportunity to "explain why his release would be justified even if

. . . he has been offered access to a vaccine."  United States v. Jones, 17 F.4th 371,

375 n. 6 (2d Cir. 2021).  However, Mr. Santos has offered no justification for declining the vaccine.

The court has reviewed the medical records submitted by counsel.  See Medical Records (Doc. Nos. 2142, 2151).   Mr. Santos offers no claim, let alone any evidence, that he asked any health professional about the vaccine nor that he inquired as to the vaccine's safety when it was offered to him.  The records indicate that Mr. Santos has had opportunities to seek sound medical advice regarding the vaccine but has failed to take advantage of them.  Thus, given that Mr. Santos has refused the vaccine without offering an informed medical reason, it is the court's view that he has failed to show that he has "exceptional circumstances" under the Compassionate Release Statute as modified by the First Step Act.  See 18 U.S.C. § 3582(c)(1)(A)(i); see also Hubbard, 2021 WL 5275997, at *4 (determining that an inmate's "bases for refusing the vaccine— the lack of information provided by [his facility] and his fear of unmonitored anaphylaxis—are not reasonable bases to support his claim of extraordinary and compelling circumstances.").

Even if the court were to find exceptional circumstances, it would still decline to grant compassionate release because of the 3553(a) factors that the court must consider under the compassionate release statute.  See 18 U.S.C. § 3582(c)(1)(A)(i); 18 U.S.C. § 3553(a).  The court reaches that conclusion having reviewed all of the filings, as well as the material before the court at the time of sentencing.

While the court recognizes that Mr. Santos received a lengthy sentence—a term of imprisonment of 66 months—that sentence accurately reflected the seriousness of the crimes Mr. Santos committed, as well as his criminal history and characteristics.

See Judgment (Doc. No. 1697).  Mr. Santos was part of a large, multi-defendant drug distribution network.  He pled guilty to conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin, in violation of sections 841(a)(1), 841(b)(1)(B), and 846 of title 21 of the U.S. Code, for which he received a guideline sentence.  Id.  Reducing Mr. Santos' sentence would therefore be irreconcilable with the serious nature of his offense and the need to provide just punishment for his conduct.  See 18 U.S.C. § 3553(a).

Furthermore, given Mr. Santos does have a criminal history, the court accords great weight to an additional 3553(a) factor: the need to protect the public from further crimes of the defendant.  See 18 U.S.C. § 3553(a)(2)(C).  Thus, even if Mr. Santos were to have presented extraordinary and compelling reasons for a sentence reduction, the court would not have reduced his sentence in light of the 3553(a) factors.

For the foregoing reasons, the court denies the Motion for Compassionate Release (Doc. No. 2125) and the Supplemental Motion to Reduce Sentence (Doc. No. 2140).

### III.   MOTION TO REDUCE SENTENCE (DOC. NO. 2058)

The court now turns to Mr. Santos' Motion to Reduce his Sentence under the First Step Act and Amendment 782 (Doc. No. 2058).  Mr. Santos seeks a "two-level sentence reduction under the [Sentencing Guidelines] and Amendment 782.  See Mot. to Reduce Sentence at 2.  Amendment 782, which went into effect on November 1, 2014, reduced the base offense level of certain drug-related crimes by two levels.  See Amendment 782   However, the court cannot now apply Amendment 782 to decrease Mr. Santos' sentence, because the Amendment's reduction was already factored into his original sentence.

Mr. Santos was sentenced on September 17, 2020, using the United States Sentencing Guidelines Manual that became effective November 1, 2018.[2]  See Revised Presentence Report at ¶ 21 (Doc. No. 1692). The 2018 Guidelines Manual incorporated the changes to the drug quantity table set forth in the 2014 Amendment 782.  Thus, Mr. Santos' base offense level of 28 was two levels lower than it would have been prior to Amendment 782.  Because Amendment 782 has already been applied to Mr. Santos sentence, and the court cannot reapply it now to further lower his guideline range, Mr. Santos is not entitled to sentence modification on this ground.  Mr. Santos' Motion to Reduce Sentence (Doc. No. 2058) is therefore denied.

## IV.  CONCLUSION

For the above reasons, the court denies the Motion for Compassionate Release (Doc. No. 2125), the Supplemental Motion to Reduce Sentence (Doc. No. 2140), and the Motion to Reduce Sentence (Doc. No. 2058).

---

[2] Mr. Santos pled guilty to conspiracy to distribute, and to possess with intent to distribute, 100 grams or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  At sentencing, he was found to have a base offense level of 28.  After a three-level reduction for acceptance of responsibility, Mr. Santos' total offense level was 25.  See Statement of Reasons (Doc. No. 1716).  His guidelines range, based on a criminal history category of II, was 63 to 78 months.  Id.  Mr. Santos was sentenced to a guidelines sentence of 66 months imprisonment and 4 years' supervised release.  See Judgment (Doc. No. 1697).

**SO ORDERED.**

Dated at New Haven, Connecticut, this 8th day of July, 2022.


_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge